[Cite as *Savage v. Sigsworth*, 2024-Ohio-5138.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

Garry N. Savage, Sr.                              Court of Appeals No.  E-24-042

    Relator

v.

Paul Sigsworth                                    **DECISION AND JUDGMENT**

    Respondent                                Decided:  October 25, 2024

* * * * *

Brent L. English, for relator.

Daniel J. Kasaris, for respondent

* * * * *

**MAYLE, J.**

{¶ 1} On August 2, 2024, Garry N. Savage, Sr. petitioned this court for a writ of habeas corpus, alleging that he is being wrongfully confined pursuant to an unreasonable pretrial bond of one million dollars.  On August 19, 2024, we issued the writ and ordered the respondent, Paul Sigsworth, Erie County Sheriff, to file a return.  Respondent filed a timely "return of writ and/or motion to dismiss/summary judgment motion."  Savage filed his response, and the issue is now decisional.  Upon review of the record,

arguments, and assertions of the parties, we hold that Savage has not demonstrated that he is being unlawfully held.

## I. Background

{¶ 2} According to his petition, Savage is incarcerated in the Erie County jail pursuant to an arrest warrant, indictment and superseding indictment, issued in *State v. Savage,* Erie County case No. 2021-CR-428. Savage attached 31 exhibits to his petition, which are various proceedings from his criminal case.

{¶ 3} According to Savage, he was "secretly indicted" on November 9, 2021, on 86 felony counts. Savage was charged with committing dozens of counts of unlawful securities practices and many counts of aggravated theft, grand theft, and theft from a person in a protected class. (Erie County case No. 2021-CR-428). Savage was arrested on April 10, 2022, in Collier County, Florida. After waiving extradition, he was "returned" to Erie County and incarcerated.

{¶ 4} Initially, the trial court set a bond of 2.3 million dollars, but it was amended downward on May 26, 2022, to $100,000, by agreement of the parties. The bond included many conditions, including that Savage be placed on house arrest at his Huron, Ohio home with an electronic monitor ("EM").

{¶ 5} Less than two months later, the trial court revoked Savage's bond for violating the terms of his house arrest. Savage was taken back into custody and has been jailed in Erie County since August 2, 2022.

{¶ 6} On January 12, 2023, a superseding indictment was issued against Savage. This time, Savage was charged with 67 felonies, which included 46 counts of unlawful

2.

securities practices, in violation of R.C. 1707.44; eight (8) counts of grand theft, in violation of R.C. 2913.02; four (4) counts of aggravated theft, in violation of R.C. 2913.02; two (2) counts of theft from a person in a protected class, in violation of R.C. 2913.02; two (2) counts of perjury, in violation of R.C. 2921.11; four (4) counts of money laundering, in violation of R.C. 1315.55; and one (1) count of engaging in a pattern of corrupt activity, in violation of R.C. 2923.32.

{¶ 7} On October 6, 2023, Savage filed a motion to reinstate his bond. The trial court denied the motion without a hearing, and Savage appealed. On June 24, 2024, we reversed and remanded the matter for a hearing, pursuant to R.C. 2937.222(B). *State v. Savage,* 2024-Ohio-2497 (6th Dist.) ("An accused's right to bail shall not be denied unless the three requirements under R.C. 2937.222(B) are established by clear and convincing evidence. The October 6, 2023 order denying Savage's motion fails to reference [those] requirements.").

{¶ 8} Pursuant to our order of remand, the trial court held a hearing on July 11, 2024, and a summary of the hearing is set forth below.

## II. The bond hearing

{¶ 9} At the outset, the state conceded that there is no evidence to support a finding that Savage "poses a substantial risk of serious physical harm to any person or to the community" under R.C. 2937.222(B). Thus, while it agreed that Savage was entitled to a bond, it argued that the prior bond of $100,000.00 was "inadequate" because Savage poses a significant flight risk. In support of that argument, it presented three audiotaped phone calls, transcribed during the bail hearing, as evidence that Savage was plotting to

3.

leave the United States for Belize, a country he mistakenly believed has no extradition treaty with the United States.

{¶ 10} Savage also testified. He denied that he is a flight risk or that he would violate the conditions of his bond, and he urged the court to reinstate the original bond of $100,000. He also denied having any financial resources and claimed therefore that any additional bond amount would preclude his ability to post bond. Savage called two character witnesses who testified on his behalf, which we discuss below.

{¶ 11} Two of Savage's alleged victims delivered prepared statements at the hearing. They described Savage's "luxurious lifestyle" and "total disregard for th[e] families he wreck[ed] in the process." A letter from a third alleged victim was read into the record.

{¶ 12} By judgment dated July 26, 2024, the trial court found that the evidence did not establish, by clear and convincing evidence, that all of the factors set forth in R.C. 2937.222(B) were met, specifically the "substantial risk of serious physical harm" element. Accordingly, the court found that it "is required to give [Savage] a bond."

{¶ 13} The court ordered that Savage post "cash, surety, or twice the value of property free and clear of all liens—in the amount of One Million Dollars ($1,000,000.00)." A number of conditions of bond were also imposed, including that Savage be placed on house arrest at his Huron, Ohio home, plus electronic monitoring.

{¶ 14} As previously indicated, Savage filed the instant petition for a writ of habeas corpus on August 2, 2024. In its "return," the respondent argues that Savage has

4.

failed to show that the bond is excessive under the facts of this case and therefore that it is entitled to judgment as a matter of law.

### III. Summary Judgment Standard

{¶ 15} Respondent asks this court to dismiss Savage's petition under either Civ.R. 12(B)(6) or Civ.R. 56.

{¶ 16} "A motion to dismiss for failure to state a claim upon which relief can be granted tests the sufficiency of the complaint." *Volbers–Klarich v. Middletown Mgt., Inc.,* 2010-Ohio-2057, ¶ 11. Generally, "courts cannot rely on evidence or allegations outside the complaint to decide a Civ.R. 12(B)(6) motion to dismiss. . . [And] [t]he prohibition on considering exhibits attached to a motion to dismiss applies with equal force in habeas cases." (Citations omitted.) *Jefferson v. Bunting*, 2014-Ohio-3074, ¶ 11. On the other hand, "the court may consider extrinsic evidence" under Civ.R. 56(C), specifically "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any." *Jones v. Wainwright,* 2020-Ohio-4870, ¶ 5; Civ.R. 56(C).

{¶ 17} Here, the respondent attached 36 exhibits to its motion. Nearly all of them are filings from the criminal case, but respondent also include an affidavit from David Biemel, from the Ohio Division of Securities, who described the contents of Savage's jailhouse phone calls. Additionally, the record in this case also includes the hearing transcript from the trial court's July 11, 2024 hearing, which Savage filed in support of his petition. Therefore, because we rely upon matters outside the petition in determining this matter, we consider respondent's motion under Civ.R. 56(C). *See Jefferson* at ¶ 12

5.

(Lower court "should have converted the motion [to dismiss]" to a motion for summary judgment where it relied upon "numerous exhibits" before dismissing petition for a writ of habeas corpus).

{¶ 18} Summary judgment may be granted only when it is demonstrated (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 67 (1978), Civ.R. 56(C).

## IV. The trial court's bond is not excessive.

{¶ 19} Savage does not dispute that he is being held pursuant to a lawfully obtained arrest warrant, indictment and superseding indictment. Savage's argument in habeas corpus is limited to the claim that his bail is excessive.

{¶ 20} "In general, persons accused of crimes are bailable by sufficient sureties, and '[e]xcessive bail shall not be required.'" *Chari v. Vore*, 91 Ohio St.3d 323, 325 (2001), quoting Section 9, Article I, Ohio Constitution. "Habeas corpus is the proper remedy to raise the claim of excessive bail in pretrial-release cases." *Id; see also State ex rel. Garcia v. Baldwin,* 2023-Ohio-1636, ¶ 26. "The burden of proof in a case alleging excessive bail is, like other habeas corpus cases, on the petitioner." *Id.* at 326.

6.

**{¶ 21}** In setting the amount and conditions of pretrial bail, R.C. 2937.011 directs the trial court to analyze certain factors in making that determination.[1] The statute provides, in relevant part,

(A) Unless the court orders the defendant detained pursuant to section 2937.222 of the Revised Code or other applicable law, the court shall release the defendant on the least restrictive conditions that, in the discretion of the court, will reasonably assure the defendant's appearance in court, the protection or safety of any person or the community, and that the defendant will not obstruct the criminal justice process. If the court orders financial conditions of release, those financial conditions shall be related to public safety, the defendant's risk of nonappearance in court, the seriousness of the offense, and the previous criminal record of the defendant.

(B) Any financial conditions shall be in an amount and type that are least costly to the defendant while also sufficient to reasonably assure the defendant's future appearance in court. . .

---

[1] R.C. 2937.011 took effect on June 30, 2023. Before that, the process governing pretrial release was governed by Crim.R. 46 ("Pretrial release and detention"). *Disciplinary Couns. v. Hoover.*, 2024-Ohio-4608, ¶ 161, fn. 4 ("Former Crim.R. 46 was repealed effective July 1, 2023, and replaced by the General Assembly with R.C. 2937.011. *See* 2023 H.B. No. 191."). R.C. 2937.011 is "substantially similar to former Crim.R. 46." *Alliman v. Sigsworth,* 2023-Ohio-4236 (6th Dist.). ("Alliman's arguments under former Crim.R. 46 will thus be considered under R.C. 2937.011."). "

7.

(E) Subject to division (I)(2) of this section, in determining the types, amounts, and conditions of bail, the court shall consider all relevant information, including the following:

(1) The nature and circumstances of the crime charged, and specifically whether the defendant used or had access to a weapon;

(2) The weight of the evidence against the defendant;

(3) The confirmation of the defendant's identity;

(4) The defendant's family ties, employment, financial resources, character, mental condition, length of residence in the community, jurisdiction of residence, record of convictions, record of appearance at court proceedings or of flight to avoid prosecution;

(5) Whether the defendant is on probation, a community control sanction, parole, post-release control, bail, or under a court protection order;

(6) The considerations required under Ohio Constitution, Article I, Section 9.

{¶ 22} We conduct a de novo review when determining whether a trial court's pretrial bail conditions are excessive. *Stevens v. Navarre*, 2021-Ohio-551, ¶ 8 (6th Dist.), citing *Mohamed v. Eckelberry*, 2020-Ohio-4585, ¶ 5 ("[I]n an original action, an appellate court may permit a habeas petitioner to introduce evidence to prove his claim and then exercise its own discretion in imposing an appropriate bail amount.") *See also Alliman v. Sigsworth,* 2023-Ohio-4236, ¶ 3 (6th Dist.).

8.

{¶ 23} Before addressing the evidence in this case, we note that the trial court incorrectly evaluated this case under R.C. 2937.23 ("Amount of bail; domestic violence offenders; anti-stalking violations"), rather than under R.C. 2937.011 ("pretrial release"). The latter statute applies to the imposition of "pretrial release" conditions, which is the situation presented here. For the record though, we note that the two statutes contain similar criteria. *See,* R.C. 2937.23(B)(3) ("In all cases, the bail shall be fixed with consideration of the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of the defendant appearing at the trial of the case."). In any event, given our de novo standard of review, we find that any error by the trial court in evaluating Savage's motion for bail under R.C. 2937.23, rather than R.C. 2937.011, is harmless. Further and based upon our de novo review of the factors set forth in R.C. 2937.011(E), we hold that Savage has not satisfied his burden to demonstrate that his pretrial bail is excessive.

{¶ 24} Under R.C. 2937.011(E)(1), regarding "the nature and circumstances" of the crimes charged, the trial court found that the allegations in this case are "very serious," and we agree. Savage is alleged to have taken money from investors "under the guise" that funds would be used to build a manufacturing facility in Youngstown, Ohio where a beverage product called "Chill Can"—described as "the world's first and only self-chilling can"—would be produced. Instead, according to the state, Savage failed to disclose and omitted material facts from investors and used investor-money "for himself or to repay other investors who had made investments with him." Savage was charged with 67 felonies, against 14 victims, "[a]ll" of whom are "either retired, elderly, or

9.

nearing retirement age." In considering the seriousness of the offense charged for the purpose of fixing bail, the court must assume the truth of the allegations of the indictment. *Petition of Gentry*, 7 Ohio App. 3d 143, 145 (6th Dist. 1982)

{¶ 25} Moreover, Savage faces 11 years in prison on the corrupt activity count, alone, *and* between three (3) and eleven (11) years for every first-degree count of securities fraud, of which there are 12. Savage's potential prison sentence makes him a flight risk, justifying the imposition of a high bond. *Garcia v. Wasylyshyn*, 2007-Ohio-3951, ¶ 8 (6th Dist.) ("The nature and number of counts, as well as the possible sentences if convicted, support the implication that petitioner may indeed be a flight risk and that protection of the community is also necessary.").

{¶ 26} Additionally, R.C. 2937.011(E)(1) also requires that we consider whether Savage "used or had access to a weapon." Upon review, the record contains one reference to a weapon, specifically the trial court's July 11, 2024 judgment entry. In assessing whether Savage was a flight risk, the court noted that, while Savage was out on bond, the Adult Probation Department ["ADP"] was contacted by a woman who "expressed her concern that '[Savage] had nothing to lose. . . had guns. . . and lived near her.'" The court did *not* revoke Savage's bond at that time, because it was unclear to the court whether the report was "paraphrasing" or "the lady's own interpretation." Still, the court expressed its "concern" about what was meant by "he had nothing to lose."

{¶ 27} Savage puts forth no argument regarding the "nature and circumstance" of the offenses, or indeed any of the criteria set forth in R.C. 2937.011(E).

10.

**{¶ 28}** Under R.C. 2937.011(E)(2), regarding the "weight of the evidence," the state asserted that it has a "very strong case" that Savage "took [money] from investors [that] didn't go where it was supposed to go" and that he failed to disclose "material things," to investors, including the fact that his securities' license was "in the process of being revoked." The 54-page superseding indictment includes detailed allegations of fraud, perjury, and theft with reference, in some cases, to particular evidence of Savage's guilt. Savage has not challenged these assertions in his petition for a writ of habeas corpus or in his response to respondent's return, except to assert, generally, that he "firmly believe[s] [that he is] going to win."

**{¶ 29}** Under R.C. 2937.011(E)(3), regarding "the identity" of the defendant, there is no evidence or claim of mistaken identity in this case. Thus, this factor does not apply in determining whether the bond is excessive.

**{¶ 30}** Next, under R.C. 2937.011(E)(4), we address Savage's "family ties, employment, financial resources, character, mental condition, length of residence in the community, jurisdiction of residence, record of convictions, record of appearance at court proceedings or of flight to avoid prosecution." We consider whether Savage poses a "flight risk" under R.C. 2937.011(E)(6).

**{¶ 31}** According to the record, Savage is 80 years old, with no criminal record. Savage described himself as "retired from the financial planning [sector]," and he reports owning a home in Huron, Ohio and a condominium in Naples, Florida, where he is a 27-year resident. Both homes are in foreclosure, and all evidence offered at trial indicated that that there are "no financial resources for him." This includes Savage's family who

11.

have helped him "as much as they possibly can." Savage has no income, but he claimed to have successfully challenged the wrongful denial of his $4,000 monthly retirement benefit from the Social Security Administration. Defense counsel argued that Savage is an "ideal candidate for the reinstatement of his existing bond," because he has no available resources with which to "abscond." Counsel also argued that if a higher bond is imposed, it would effectively preclude Savage from making bail because he "cannot post it."

{¶ 32} Regarding Savage's "character," a former employee described Savage as "a great friend. . . fatherly. . . generous. . . kind. . . [and] giving." Likewise, Savage's daughter testified that he is a "good man," and she vowed to do "everything" to ensure that Savage "would have somewhere to live" and to help him "comply" with the terms of his bail. Savage said that he would have no objection to living with his daughter.

{¶ 33} Under R.C. 2937.011(E)(5), we address whether Savage is on "probation, a community control sanction, parole, post-release control, bail, or under a court protection order." At hearing, defense counsel asserted that Savage has "no criminal record," and there is no evidence to contradict that. Of course, Savage was previously placed on a $100,000 bond in *this* case, which was revoked for violating its terms. Specifically, Savage is alleged to have visited locations near his home that were not approved, including his girlfriend's house and a bar. At the hearing, defense counsel argued that the bond violations were "de minimis" in scale and occurred because Savage "got confused about what he was supposed to do." In its decision, the trial questioned how Savage could have been confused, noting that he "went to various non-approved locations" *after* 12.

his requests to visit those locations were denied.  For his part, Savage disclaimed any confusion. Savage expressly denied violating the terms of his bond during a jailhouse phone call with his son, which was played and transcribed at the hearing.  Savage claimed to have been set up by "public officials," including the judge and "attorney general," whom he described as "liar[s]" and the "crookedest people on the planet."

{¶ 34} The trial court also found that "while on bond [Savage] had contact with one of the victims . . . in spite of his bond restricting contact with the victims or their families.  She (the victim) was upset about this and contacted the APD."  Savage did not address this particular bond violation at hearing, expect to profess that *would* not have any contact with victims in the future.

{¶ 35} Finally, R.C. 2937.011(E)(6) requires that we assess the "considerations" set forth in Article I, Section 9, Ohio Constitution, which provides that "[w]hen determining the amount of bail, the court shall consider public safety, including the seriousness of the offense, and a person's criminal record, *the likelihood a person will return to court*, and any other factor the general assembly may prescribe."  (Emphasis added.)

{¶ 36} At hearing, the factor that received the most attention affecting the setting of bond was assessing the risk that Savage will fail to appear for his trial.  In the first jailhouse phone call, on March 15, 2023, Savage told his girlfriend, L.K., to "look up the Caribbean Islands. . . specifically Belize."  Savage explained that he was "looking for any of the islands that don't have extradition—extradition treaties with the U.S."  Savage said that he intended to "win this thing" but also that he did not want to "mess with these

13.

people" and that he wanted "joint citizenship with one of (inaudible) . . . that don't have an extradition treaty [with] the U.S."

{¶ 37} In the second call, the next day, L.K. told Savage that she had "been on-line looking up stuff [he] wanted" and had learned that Belize and the United States actually entered into an extradition treaty in 2000. Savage asked if there were "any other islands that don't have [extradition]", and L.K. told him that "they've all . . . passed" treaties. Later in the conversation, Savage commented that "there are certain rules. Like Florida won't move you unless you're a fugitive." Savage pondered whether Belize "might have rules that they won't do it [either]," and he announced his intention to "dig in deeper" into that issue. A few days later, on March 19, 2023, Savage spoke with his son and announced that he was "getting Belize checked out" and his intention to establish "dual residency." Savage added that once he left Ohio, he "won't be coming back," and that if anyone wants to see him, "you got to come to Florida or Belize."

{¶ 38} Savage denies that he ever intended to flee the county for Belize. He claims that he intends to relocate there "when I win the case." When asked about his interest in Belize's extradition treaty, he attempted to link it to his distaste for secret grand juries. He testified, "I was interested in [whether there was a treaty in Belize] because of the regulations in Ohio [regarding] the grand jury system . . . and I wanted to make sure that they didn't have that in their place or I wouldn't be going there." We share the trial court's assessment that Savage "did not explain" the issue. More precisely, Savage's answer made no sense.

14.

{¶ 39} The trial court found that Savage poses a flight risk, irrespective of whether he intends to leave the United States. It noted that Savage—in the midst of testifying about his potential release on bond—asserted that he "need[s]" to return to Florida to "mitigate" against losing the property in foreclosure. The trial court expressed its "concern," given his lack of "credibility," that Savage would "come to court every time." The record supports the trial court's findings.

{¶ 40} Upon review, we find that the one million dollar bond is reasonable and not excessive in light of the serious nature of the charges pending against Savage, his previous bond violations, and his articulated desire to violate the terms of his bond, if released in the future. Thus, while we recognize that this case involves a high bail amount, Savage has not made a proper showing of the excessiveness of bail under the circumstances of the case. *Accord Stevens v. Navarre*, 2021-Ohio-551 (6th Dist.) (Pretrial bond of $1.4 million with no ten percent found not excessive, despite evidence that defendant—who was charged with multiple sex offenses against children—was a longtime resident of the community, had no prior felony criminal record, and lacked the financial resources to satisfy the bond).

## V. Conclusion

{¶ 41} Having reviewed the record, Savage's petition, respondent's return, and Savage's response, we find that there are no material facts in dispute. Based upon our consideration of the factors in R.C. 2937.011 and the arguments of the parties, we hold that Savage has failed to satisfy his burden to demonstrate that the trial court's imposition of a $1.0 million pretrial bond is excessive. Accordingly, respondent's motion for

15.

summary judgment is found well-taken, and this action is dismissed with prejudice. Costs are assessed to Savage.

**To the Clerk: Manner of Service.**

{¶ 42} The clerk is directed to serve upon all parties in a manner prescribed by Civ.R. 5(B) notice of the judgment and its date of entry upon the journal.

Action dismissed.

Christine E. Mayle, J.

_____
JUDGE

Gene A. Zmuda, J.

_____
Charles E. Sulek, P.J.                                JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.